IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

NANCY L. SIZEMORE                                           PLAINTIFF

     v.                    Case No. 05-3030

BAXTER HEALTHCARE CORP. and
HARTFORD LIFE GROUP INSURANCE
Co.                                                         DEFENDANTS

<u>MEMORANDUM OPINION AND ORDER</u>

Now on this 26th day of March, 2007, this cause comes on for consideration and decision and the Court, being well and sufficiently advised in the premise, finds and orders as follows:

1.  Plaintiff brings this action pursuant to the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, challenging the decision to deny her long-term disability benefits.

The parties have submitted a stipulated administrative record (the "AR") (Doc. 14 pgs. 1-175) and the plaintiff has submitted "supplemental documents" that she argues should be considered by the Court (Doc. 14 pgs. 176-81)

2.  Currently before the Court is the plaintiff's **Motion for Summary Judgment (Doc. 15),** which will be treated as a motion for entry of judgment and the Court, for the reasons stated below, finds that the decision denying the plaintiff benefits was not supported by substantial evidence.  A separate judgment will be entered in favor of plaintiff on the basis of this Memorandum

Opinion and Order.

    3.  **Background**  -- The Court notes the following information
as background for its analysis of plaintiff's claims:

    (a)  Plaintiff worked at Baxter Healthcare Corporation's
facility ("Baxter") in Mountain Home, Arkansas, from February 28,
1983, up through August 6, 2002, at which time she alleges she
became disabled and unable to work due to fibromyalgia,
osteoarthritis and panic attacks.   (AR 172-73.)

    (b)  Plaintiff participated in an employee benefits plan
funded by Baxter and administered by Hartford Life Group Insurance
Company ("Hartford").[1]  Under the terms of the plan, an employee is
entitled to disability benefits for 12 months if the employee is
unable to perform the duties of her own occupation.  After this 12-
month period, disability benefits are only payable if the employee
is unable to engage in any occupation for which she is qualified.
(AR 17)

    (c)  Hartford awarded plaintiff benefits for the initial 12
month period, finding that she was unable to perform the duties of
her regular occupation as an extruder blender operator, which
required heavy lifting and standing for hours at a time.  (AR 90-
91, 163)  Hartford thereafter conducted a review to determine
whether plaintiff was disabled under the more stringent definition

_____

    [1]Hartford was formerly known as CNA Group Life Assurance
Company and is identified in that way by the employee benefits
plan.

for post-12 month coverage.  Hartford concluded that plaintiff was not entitled to continuing benefits, as she was capable of performing sedentary work.  (AR 49-50)

(d)  The employee benefits plan is funded by policy number SR-83079247.  (AR 2) The terms of the policy define *disability* as follows:

**How do We define Disability?**

*Disability* or *Disabled* means that *You* satisfy the Occupation Qualifier or the Earnings Qualifier [not applicable in this case] as defined below:

**Occupation Qualifier**

*Disability* means that during the *Elimination Period* and the following 12 months, *Injury or Sickness* causes physical or mental impairment to such a degree of severity that *You* are:

> 1) continuously unable to perform the *Material and Substantial Duties of Your Regular Occupation*; and
>
> 2) not *Gainfully Employed*.

After the *LTD Monthly Benefit* has been payable for 12 months, *Disability* means that, *Injury* or *Sickness* causes physical or mental impairment to such a degree of severity that *You* are:

> 1) continuously unable to engage in any occupation for which *You* are or become qualified by education, training or experience; and
>
> 2) not *Gainfully Employed*.

(AR 17).

(e)  The Policy further requires proof of disability as follows:

**Proof of *Disability***

The following items, supplied at *Your* expense, must be a part of *Your* proof of loss.  Failure to do so may delay, suspend or terminate *Your* benefits.

    1)    The date *Your* Disability began;

    2)    The cause of *Your* Disability;

    3)    The prognosis of *Your* Disability;

    4)    Proof that *You* are receiving Appropriate and Regular Care for *Your* condition from a Doctor, who is someone other than *You* or a member of *Your* immediate family, whose specialty or expertise is the most appropriate for *Your* disabling condition(s) according to *Generally Accepted Medical Practice*.

    5)    Objective medical findings which support *Your Disability*.  Objective medical findings include but are not limited to tests, procedures, or clinical examinations standardly accepted in the practice of medicine, for *Your* disabling condition(s).

    6)    The extent of *Your Disability*, including restrictions and limitations which are preventing *You* from performing *Your Regular Occupation*.

    7)    Appropriate documentation of *Your Monthly Earnings*. If applicable, regular monthly documentation of *Your Disability Earnings*.

    8)    If *You* were contributing to the premium cost, *Your* Employer must supply proof of *Your* appropriate payroll deductions.

    9)    The name and address of any *Hospital or Health Care Facility* where *You* have been treated for *Your Disability*.

**Continuing Proof of *Disability***

*You* may be asked to submit proof that *You* continue to be *Disabled* and are continuing to receive *Appropriate and Regular Care of a Doctor*.  Requests of this nature will only be as often as *We* feel reasonably necessary.  If so, this will be at *Your* expense and must be received within

30 days of *Our* request.  Failure to do so may delay, suspend or terminate *Your* benefits.

(AR 27)

(f)   The Policy also grants Discretionary Authority to the administrator:

### *Discretionary Authority*

The Policy is delivered in and is governed by the laws of the governing jurisdiction and to the extent applicable by the Employee Retirement Income Security Act of 1974 (ERISA) and any amendments thereto.  The Core Plan [Administrator] and other plan fiduciaries have discretionary authority to determine Your eligibility for and entitlement to benefits under the Policy.  The Core Plan [Administrator] has delegated sole discretionary authority to CNA Group Life Assurance Company [now Hartford] to determine Your eligibility for benefits and to interpret the terms and provisions of the Policy.

(AR 33)

4.   **Evidence in Administrative Record** -- The evidence included in the administrative record reflects the following:

*   During the time period in question, plaintiff was approximately 57 years of age.

*   In September 2001, a rheumatologist diagnosed plaintiff with fibromyalgia.  Plaintiff was also diagnosed as suffering from panic attacks, osteoarthritis of the knees, mild bulges of the cervical spine, mild degenerative disease in her hips, obesity, and Raynaud's phenomenon[2].  (AR 82, 130-41)

---

[2]"Raynaud's phenomenon is a condition in which blood flow to the surface tissue of the hands and feet is temporarily decreased, usually as an overresponse to cold temperatures."

5

*    Plaintiff's fibromyalgia symptoms became progressively worse and, in July 2002, she sought treatment with Dr. David Kent. Dr. Kent developed a medication regimen for plaintiff and, as of October 2002, recommended that plaintiff "pursue nothing in the way of activity other than basically a sedentary status, self-care activities around home, lifting not more than five pounds on an occasional basis.... The patient is continuing to work with her employer in regards to her long-term disability planning." (AR 117)

*    On October 16, 2002, a registered nurse conducted a "claim analysis" on behalf of Hartford.  The nurse noted that while plaintiff appeared to be capable of lighter duty work, her "current functional status [was] unknown and it would be reasonable to follow-up with [her attending physician] re: [return to work with] appropriate restrictions."  (AR 82)

*    On November 1, 2002, Hartford submitted a form requesting Dr. Kent to specify a return to work date for plaintiff.  Dr. Kent responded "indefinite."  (AR 111)

*    Enclosed in the Administrative Record are documents from the Social Security Administrative, dated only by what appears to be a facsimile time/date stamp of November 26, 2002.  (AR 103-105) According to the documents, the plaintiff was found by the Social Security Administration to have become disabled on August 6, 2002.

---

*WebMD*<hppt://www.webmd.com/hw/health-guide/atoz/hw180982.asp.

(AR 103)  The plaintiff was scheduled to begin receiving benefits of $795 in February 2003.  (AR 103)

*    On March 24, 2003, a case manager conducted a vocational assessment to determine plaintiff's entitlement to benefits beyond the initial 12-month period.  The case manager concluded that while plaintiff could not perform the duties of her prior occupation, she could perform "alternative gainful occupations [such as] Reception Clerk, Attendance Clerk, and Telephone Customer Service Representative."  (AR 97)

*    The Vocational Case Manager who completed the March 24, 2003 vocational assessment wrote to the plaintiff on March 26, 2003.  (AR 94-96) In the letter the case manager informed the plaintiff that although she had been found to be unable to perform the duties of her occupation, it had been determined that she could perform alternative occupations including "Telephonic Customer Service Representative, Reception Clerk, and Attendance Clerk." (AR 94-96)[3]

*    On November 13, 2003, Dr. Kent noted that "Nancy Sizemore is totally disabled and permanently so secondary to diagnosis of fibromyalgia."  Dr. Kent continued as follows:

[3]The March 26 letter inaccurately stated that the plaintiff's benefits were payable under the disability policy for *24 months* if unable to perform the duties of her "own occupation."  A letter dated March 28, 2003 corrected this inaccuracy and stated that coverage for benefits for the own occupation period extends only *12 months*.  (AR 90-92)

> Her disease fibromyalgia is incapacitating in its
> activity related exacerbations of pain, unpredictable and
> unrelenting recurrences of incapacitating fatigue, and
> requires intervals of rest and modulation of her work
> activities in order to sustain self care and homemaking
> provision for herself. Due to permanent and unrelenting
> nature of fibromyalgia, cure is not within our reach.
> Chronic multi-medication relief of the muscle pain,
> activity intolerance, fatigability, and stiffness are
> part of the typical treatment repertoire of fibromyalgia.
> In this regard, I believe that her disability income
> should continue as a total and permanent disability state
> secondary to fibromyalgia.

(AR 84)

    * On December 12, 2003, the Vocational Case Manager wrote to

the plaintiff explaining Hartford's decision to terminate benefits

as of February 18, 2004.  The letter states:

> Our records indicate that you ceased work on 08/06/2002
> and became functionally impaired from performing your own
> occupation as an Extruder Blender Operator on 08/07/2002.
> It was determined that you were unable to perform
> prolonged standing and lifting as required by your
> occupation. Therefore, benefits became payable effective
> 02/19/2003 and have continued during your 12 months own
> occupation period. However, as of 02/18/2004, no further
> benefits are payable under the above referenced Long Term
> Disability policy.  Please allow us to explain.
>
>    . . .
>
> Your file was referred to me, a certified vocational case
> manager to assess your vocational capabilities.  You were
> contacted on 03/21/2003 for vocational information.  You
> stated that you were employed as an Extruder Blender
> Operator at Baxter for over twenty years.  You previously
> worked as a Receptionist/Office Assistant, and as a
> Teacher's Aide.  You stated that you earned a High School
> Diploma and also attended one semester at Southern
> Illinois University.
>
> During the interview on 03/21/2003, you stated that you
> were doing light housekeeping tasks, cooking, reading,
> doing craft projects in gallery glass, and visiting with

your family.

According to your physician, Dr. David Kent on 10/18/02, you were restricted to sedentary activities with no lifting over five pounds occasionally.  He added that your travel is restricted to local distances.

On 11/13/2003, Dr. Kent sent a letter supporting continuation of disability secondary to fibromyalgia. However there was no medical evidence provided to support that you are unable to perform primarily seated work with the flexibility to stand as needed for comfort.

Therefore, based upon your functionality and vocational background, it has been determined that you are able to perform gainful, alternative occupation.  A sample of occupations include:

*      Telephone Customer Service Representative
*      Attendance Clerk
*      Reception Clerk

In summary, the medical and vocational documentation in your file does not support that you remain disabled form any occupation at this time.  Therefore, your benefits will end on 02/18/2004.  If you disagree with our decision, you have the right to appeal.  This appeal is afforded in accordance with the Employee Retirement Income Security Act of 1974 (ERISA), as amended, to the extent it is applicable to your claim.

If you have additional medical information not mentioned above or wish us to reconsider our decision, you should submit your formal request for reconsideration **in writing** to my attention **within 180 days of the date of this letter**. . . .

We will reconsider our decision at the time we receive the additional information you submit.  If this information does not alter our decision, you will be informed of this and your claim will then be submitted for a formal review.  A ruling will be issued within 45 days of receipt of your request for reconsideration; however, you will be notified within the first 45 days if this review will require an extension of time to reach a decision.  This review allows an additional 45 days to reach a decision if necessary.  This decision will be in

> writing and mailed directly to you or your
> representative. To the extent your claim is governed by
> ERISA, you have the right to bring a civil action under
> § 502(a) of ERISA following an adverse decision on
> appeal.
>
> Appeals received later than 180 days may not be
> considered. . . .

(AR 49-50)

   * Hartford's claim file notes reflect that the plaintiff called Hartford on April 16, 2004 (within the 180-day appeal period). (AR 41) The notes reflect that during the telephone conversation, the plaintiff stated that she had received the termination letter but could not locate it. (AR 41) Hartford told the plaintiff that they would send her a duplicate copy of the termination letter. The notes also reflect that the plaintiff was advised to send her appeal in writing along with any supporting documentation. (AR 41)

   * On August 11, 2004, attorney Roger Morgan wrote to Hartford on behalf of the plaintiff requesting reconsideration of the decision. (AR 74) Specifically, Morgan stated:

> it is my understanding that in response to your letter of
> December 12th, my client's primary physician, Dr. David
> Kent, submitted additional records to your office for
> evaluation. We were, of course, curious as to whether a
> reconsideration was given to these additional records.
> In addition, we would request an additional
> reconsideration of this matter which would allow us time
> to submit other evidence of disability to you. My client
> is very ill herself, and her husband has just been given
> a report of cancer free, after a long battle with lung
> cancer. This is the first opportunity for her to present
> any argument on her behalf, except as made by Dr. Kent.
> Your help in granting additional time for a

reconsideration would be appreciated.

(AR 74).

    *  On August 23, 2004, Hartford responded to Morgan's letter.
(AR 47) Hartford noted "we have not received any medical records on
this claim since the 12/12/2003 letter was mailed.  We did receive
a letter from Dr. Kent in November of 2993 which was addressed in
our claim review."  (AR 47) Further, the letter states:

> On December 12, 2003 Ms. Sizemore was advised that if she
> wanted us to reconsider our decision, she should submit
> a formal request for reconsideration **in writing within
> 180 days of the date of the closure termination letter.**
> Please be advised that the reconsideration period of 180
> days has expired, and a request for reconsideration will
> not be considered late.  Ms. Sizemore's claim remains
> closed.

(AR 47)

    *  In letters received September 24, 2004, both the plaintiff
and her husband wrote to Hartford.  (AR 69-72)

    First, the plaintiff explained her physical pain, exhaustion,
and depression.   Additionally,  the  plaintiff  discussed  her
husband's cancer diagnosis and how it affected her ability to
appeal her benefits claim.  Finally, the plaintiff listed her daily
medications.  (AR 69-70)

    The plaintiff's husband, Larry Sizemore, also wrote to
Hartford "to appeal [the] decision to terminate Nancy's Ins. on
Dec. 15."  Mr. Sizemore noted that "[o]n Dec. 16, we were at Mayo
Clinic in Rochester, Minnesota on that day I was told I had 6 to 8
months to live because of lung cancer.  We had to put everything on

11

hold to fight & treat this disease." Further, Mr. Sizemore stated "Nancy is in very bad physical & mental condition.  She takes many different kinds of medicine, she has trouble sleeping at night, she hurts so bad at times she is crying day & night."  Finally, Mr. Sizemore stated, "Nancy was the hardest working person in her department . . . if she was not disabled she would have taken care of this ins. problem."  (AR 71-72)

* On October 5, 2004, Hartford wrote to Roger Morgan, the attorney for the plaintiff, noting the receipt of the letters of the plaintiff and her husband.  (AR 46)  The letter states

> [a]lthough I can appreciate that Ms. Sizemore has been focused on her husband's battle with cancer, the fact remains that the reconsideration period of 180 days expired on 6/12/2004.  Your previous letter dated 8/11/2004, advised that you represented Ms. Sizemore and requested additional time for reconsideration.  We received your letter on August 17, 2004, and it was more than two months late.  As you know, I responded to your request for reconsideration, copied Ms. Sizemore, and informed you that this claim remains closed.

> The appeal letters written by your client and Mr. Sizemore were received more than 3 months beyond the reconsideration period of 180 days.  As the reconsideration period has expired, the appeal will not be considered late.  Ms. Sizemore's claim remains closed.

(AR 46)

* Next, Hartford received a letter, dated November 29, 2004 from attorney Rick Spencer.  (AR 65-67) Spencer advised that he had been retained to represent the plaintiff "in her claim for long-term disability benefits."  (AR 65) Spencer requested copies of all of the medical evidence used as a basis for denying the plaintiff's

long-term disability benefits.  Spencer further advised "[w]hether or not you are willing to open this claim, we will be sending additional evidence and would anticipate that it would be beneficial for you to know that Ms. Sizemore is receiving her Social Security disability."  (AR 65)

    *  On December 16, 2004, Hartford responded to Spencer's letter an forwarded to him a copy of the medical records in the plaintiff's file.  (AR 45)

    *  Enclosed with the administrative record behind a separate tab is a letter dated January 26, 2005 from Spencer to Hartford. (AR 176)

    From a review of the **Notice of Filing of Administrative Record and Supplemental Documents Submitted by Plaintiff** (doc. 14), it appears that Hartford objects to the inclusion that the letter of January 26, 2005 and its enclosures.  Although the issue is not addressed in the briefs, the Court assumes from the documents it filed that Hartford claims it never received the January 26, 2005 letter or enclosed documents.  In any event, enclosed with the letter is a "Fibromyalgia Residual Functional Questionnaire" from Dr. David Kent, M.D. dated 12/12/04 on which all written documentation is entirely illegible, and therefore unhelpful, were it to be considered by the Court.  (AR 177-181)

    *  In a letter dated March 1, 2005, Spencer forwarded to Hartford a Neuropsychological Evaluation and a Mental Residual

Functional Capacity Questionnaire from Dr. Vann A. Smith and requested that the documents be filed "as evidence" in the plaintiff's claim.  (AR 53-62) The Neuropsychological Evaluation concluded that the plaintiff's "neurocognitive symptoms . . . interfere with the patient's capacity to carry out routine activities of daily living in a consistent manner, rendering her . . . disabled at this time."  (AR 56)

        *  On March 10, 2005, Hartford responded to Spencer's letter of 3/01/2005.  Hartford stated "[t]he adverse decision on this claim was made on December 12, 2003 and the claimant was advised of her appeal rights on that date.  The claimant did not file an appeal [in] a timely manner.  Her file remains closed."  (AR 44)

## Discussion

        5.  **Baxter Healthcare Corporation** -- First, the Court notes that -- in their brief -- defendants argue that judgment should be granted in favor of the plaintiff's employer, Baxter, because it was not the party in control of administering the benefit determination.

        The record indicates that the benefits were provided to Baxter employees through a policy of insurance issued by Hartford Life Group Insurance Company ("Hartford"); that claims administration was handled exclusively by Hartford (identified as "CNA Group Life Assurance Company" by the plan); and that Baxter played no part in the decision to deny the long-term benefits.  Accordingly, the

Court concludes that judgment should be entered in Baxter's favor, and that plaintiff's claim against Baxter should be dismissed.  *See* Layes v. Mead Corp., 132 F.3d 1246 (8th Cir. 1998).

6.  **Discovery** --  Next, the Court notes plaintiff's argument that the Court should allow her to conduct discovery in this case. Specifically, in her brief, the plaintiff states:

> Plaintiff continues to maintain and believe that if discovery were allowed the Plaintiff would be able to prove violations of the requirements of 29 C.F.R. § 256.503-1 with regard to whether or not the record could reasonably be closed in this case as well as a conflict of interest between the Plaintiff and Defendant which could possibly alter the plaintiff's burden of proof and this Court's standard of review.

(Plaintiff's Brief in Support of Motion for Summary Judgment, document #16, p. 6 (but numbered p. 8)) Additionally, the Court notes that plaintiff's brief appears to refer to discovery requests that the plaintiff asked this Court to authorize in this case.

Since the record does not reflect a prior request by the plaintiff to compel discovery in this matter -- nor, obviously, any prior order by the Court with respect to same, it is unnecessary for the Court to address the issue.  Nevertheless, the Court will make the following observations in passing:

*  Under the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, this Court's function is to conduct a review of the record that was before the administrator of the employee benefit plan when the

15

claim was denied.  *See* <u>Farfalla v. Mutual of Omaha Ins. Co.</u>, 324
F.3d 971, 974 -975 (8th Cir. 2003).  Because evidence outside the
administrative record is generally not admitted, discovery is not
conducted absent extraordinary circumstances.  <u>Brown v. Seitz
Foods, Inc.</u>, 140 F.3d 1198 (8th Cir. 1998).

        *  The Court has not seen the discovery requests plaintiff had
in mind; however, she appears to seek discovery with respect to
when the administrative record was closed and as to whether a
conflict of interest exists.

        Although a conflict of interest *could* affect the standard of
review, "not every allegation of impartiality alters the standard
of review.  A plan beneficiary is not entitled to less deferential
review absent material, probative evidence demonstrating that a
palpable conflict of interest existed, which caused a serious
breach of the administrator's fiduciary duty."  <u>Farley v. Arkansas
Blue Cross and Blue Shield</u>, 147 F.3d 774, 776 (8th Cir. 1998).
Moreover, a conflict of interest of a level sufficient to affect
the standard of review "will ordinarily be apparent on the face of
the administrative record . . . [t]hus, the district court will
only rarely need to permit discovery and supplementation of the
record to establish these facts."  <u>Id</u>. at n.4.  *See also* <u>Abram v.
Cargill, Inc.</u>, 2003 WL 1956218 (D.Minn. 2003).

        *  In light of the controlling law on the issue of discovery
in ERISA matters, therefore, even if discovery had been properly

requested, the Court strongly doubts plaintiff would have been able to present *any* evidence which would convince the Court that extraordinary circumstances exist to warrant discovery in this case.

      7.  **<u>Standard of Review</u>** -- ERISA provides a plan beneficiary with the right to judicial review of a benefits determination. *See* 29 U.S.C. § 1132(a)(1)(B). A denial of benefits by a plan administrator must be reviewed *de novo* unless the benefit plan gives the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan, in which case the administrator's decision is reviewed for an abuse of discretion. *See* <u>Firestone Tire & Rubber Co. v. Bruch</u>, 489 U.S. 101, 115 (1989).

      Under the terms of plaintiff's employee benefits plan, the administrator has the "discretionary authority to determine . . . eligibility for and entitlement to benefits under the Policy. . . ." (AR 33) Accordingly, defendants' decision will be reviewed for an abuse of discretion.

      Under the abuse-of-discretion standard, the Court must determine whether a reasonable person could have reached the same decision. *See* <u>House v. Paul Revere Life Ins. Co.</u>, 241 F.3d 1045, 1048 (8th Cir. 2001). This inquiry focuses on the presence or absence of substantial evidence supporting the administrator's decision. <u>Id.</u> While the administrator's decision need not be

supported by a preponderance of the evidence, there must be "'more than a scintilla.'"  Id. (citations omitted).  Both the quantity and quality of evidence may be considered. *See* Norris v. Citibank, 308 F.3d 880, 884 (8th Cir. 2002).

Although the plaintiff's employee benefits plan clearly provides discretionary authority to the administrator -- and is therefore subject to the abuse of discretion standard -- plaintiff appears to argue that a conflict of interest should alter the standard of review.  However, as set forth above, that issue is not properly presented and this argument is rejected.  The abuse of discretion standard will be used.

8.  **Denial of Benefits** -- Hartford denied the plaintiff's claim for benefits under the "any occupation" standard, finding that there was no medical evidence to support an assertion that the plaintiff would be unable to perform primarily seated work with flexibility to stand as needed for comfort.  Specifically, Hartford found the plaintiff capable of performing alternative occupations including Telephonic Customer Service Representative, Reception Clerk, and Attendance Clerk.  (AR 49-50)

The Court's review of the record causes it to conclude that the evidence presented by plaintiff supports her diagnosis of fibromyalgia.  Moreover, Dr. Kent clearly recommended that the plaintiff "pursue nothing in the way of activity other than basically a sedentary status, self-care activities around home,

18

[and] lifting not more than five pounds on an occasional basis . . . . " (AR 117) In addition, it is undisputed that when asked to specify a return to work date for the plaintiff, Dr. Kent responded "indefinite."  (AR 111)

The Court does not view Dr. Kent's recommendations as being consistent with the conclusion that the plaintiff is capable of sedentary work; and, while plan administrators are not required to "accord special weight to the opinions of the claimant's physician," they may not "arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2003).

If Hartford was dissatisfied with the medical evidence submitted by plaintiff, it was entitled to require her to submit to an independent medical examination.  Had it done so, Hartford would have been entitled to discount plaintiff's treating physician's opinions entirely in favor of a contrary opinion produced by the independent examiner.  *See* Donaho v. FMC Corp., 74 F.3d 894, 901 (8th Cir. 1996) ("where there is a conflict of opinion, the plan administrator does not abuse his discretion in finding that the employee is not disabled").  Hartford did not elect to so proceed. Accordingly, the Court sees nothing in the record to refute the documentation supporting plaintiff's entitlement to benefits.  *Cf.* House v. Paul Revere Life Ins. Co., 241 F.3d at 1048 (administrator improperly denied employee's claim for disability benefits where it

had no evidence refuting documentation from plaintiff's treating specialist that supported entitlement to benefits).

Further, the plaintiff has been found to be disabled by the Social Security Administration.  (AR 103)  While the disability standards under the ERISA plan at issue may be different than the social security standards, the Social Security Administration's determination "is admissible evidence to support an ERISA claim for long-term disability benefits."  *See* Riedl v. General American Life Ins. Co., 248 F.3d 753, 759 n.4 (8th Cir. 2001); Duffie v. Deere & Co., 111 F.3d 70, 74 n.5 (8th Cir. 1997).[4]

## Conclusion

9.  First, as set forth above, the Court concludes that **Baxter Healthcare Corp**. should be **dismissed** from this action.  The plaintiff's complaint as stated against **Baxter Healthcare Corp**. should be, and it hereby is, **dismissed**.

8.   In addition, based on the foregoing, the Court concludes

---

[4]The Court notes that the medical evidence submitted by the plaintiff after Hartford's December 12, 2003 denial letter was unquestionably submitted *after* the expiration of the appeal period.  Although the plaintiff argues that she was preoccupied with her husband's illness and should have been allowed to extend the appeal period, controlling case law clearly provides: "[w]hen reviewing a denial of benefits by an administrator who has discretion under an ERISA-regulated plan, a reviewing court 'must focus on the evidence available to the plan administrators at the time of their decision and may not admit new evidence ....'" King v. Hartford Life and Acc. Ins. Co., 414 F.3d 994, 999 (8th Cir. 2005) (citation omitted). The Court will, therefore, *not* consider the evidence submitted by the plaintiff after the expiration of the appeal period.

that Hartford's decision was not supported by substantial evidence and that Hartford therefore abused its discretion in denying plaintiff's claim for continuing disability benefits.

10.   The parties shall have ten days from entry of this order in which to confer and submit a written stipulation calculating the total award due plaintiff for past-due benefits.  A judgment will then be entered awarding plaintiff past-due benefits and reinstating the payment of continuing benefits.

11.   Finally, the Court will consider awarding a reasonable attorney's fee and costs to plaintiff under 29 U.S.C. § 1132(g). Plaintiff shall submit an application for fees and costs, including an itemization and affidavit and a brief supporting her argument as to why an award of fees and costs would be appropriate in this case, within ten days as well.  Defendants shall have ten days thereafter in which to file a response.

IT IS SO ORDERED this 26th day of March 2007.

/S/JIMM LARRY HENDREN
JIMM LARRY HENDREN
UNITED STATES DISTRICT JUDGE